J. Joseph Bainton (JB-5934)
BaintonLynch LLP
767 Third Avenue
New York, New York 10017
Telephone: (212) 201-5705
Facsimile: (212) 704-8544
e-mail: bainton@baintonlynch.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

INCREDIBLE FOODS GROUP, LLC,

                      Plaintiff,

   -- against –                           Misc. No.

UNIFOODS, S.A. de C.V.
                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PETITION TO VACATE IN PART ARBITRATION AWARD**

Plaintiff Incredible Foods Group, LLC ("IFG"), for its petition pursuant to 9 U.S.C. § 10 to vacate so much of the award of the American Arbitration Association dated July 24, 2014 entered in an arbitration entitled <u>Incredible Foods Group, LLC v. Unifoods, S.A. de C.V.</u>, Case No. 50 467 T 01010 13 (the "Arbitration") (the "Award") as fails to find that Defendant Unifoods, S.A. de C.V. ("UF") violated Section 4.3 of the Agreement (as that term is defined in the Award) and in turn award IFG damages proximately caused by that breach because

the Award's denial of such relief fails to draw from the essence of the underlying Agreement respectfully shows:

1. A copy of IFG's Statement of Claim is attached hereto as Exhibit A. The Agreement from which this dispute arises is attached as Exhibit A to the Statement of Claim.

2. Section 19 of the Agreement is a forum selection clause that selects this Court as the court in which this proceeding should be brought.

3. A copy of the Award is attached hereto as Exhibit B.

**Background of This Motion**

4. Familiarity with the facts stated in the Award is respectfully assumed.

5. The undisputed evidence presented at the arbitration was that IFG was a pure marketing company and that its two principals had no technical expertise.

6. UF by contrast was and is a substantial Mexican manufacturing company that has been manufacturing a wide range of products for many years in Mexico.

7. Among those products is a fruit drink known as Bonafina™.

8. IFG sold Bonafina™ within its territory. The product IFG originally sold was manufactured in Texas.

9. For a host of reasons – some of which are obvious and none of which are relevant to the determination of this motion – pursuant to Section 3.1 of the Agreement, IFG identified Diamond Drinks, which is located in Pennsylvania, as a "potential US Manufacturer for [UF's] approval who are capable of producing [Bonafina™] at a level of quality consistent with and subject to the quality control and product specifications established by PDL and [UF] related to the UF products in Mexico and **as adapted as necessary to satisfy unique US requirements** ("the Quality Controls and Product Specifications") as described in Exhibit 3.1. Within thirty (30) days of its identification **and after inspection and evaluation, [UF] shall, in its sole discretion, approve or deny [IFG's] use of any potential US Manufacturer so identified.**" (Emphasis added.) *See* Award, Paragraph 5 (quoting from the Agreement).

10. UF conducted the inspection and evaluation contemplated by Section 3.1 of the Agreement. Award, Paragraphs 36-37.

11. After having approved Diamond Drinks "in its sole discretion," the Agreement in Section 4.3 obliged UF to: "provide Diamond Drinks with specifications and **recipes** ("Product Specifications") **such that [Diamond Drinks] can produce UF Products consistent with UF standards.**" (Emphasis added.) Award, Paragraph 6 (quoting from the Agreement).

3

12. IFG contends that the "essence of the Agreement" placed UF and UF alone in charge of the Bonafina™ recipe generally and in particular in charge of providing Diamond Drinks with a recipe that "worked" in the Diamond Drinks facilities that UF "in its sole discretion" approved.

13. To whatever extent that UF might have contended that the Agreement was unclear on this point, that argument was flatly contradicted by UF's admission in the only relevant extrinsic evidence received in evidence at the hearing relevant to this issue.

14. To prove that UF was "in charge" of all technical matters, IFG presented as its Exhibit 2 an e-mail from Javier Perez Grovas dated May 19, 2009 stating:

> Cal, Julia, Hector, Eduardo, Dave, I want to tell you something:
> MIGUEL ANGEL RUIZ was selected as Unifoods Technician for all operation in USA, he is the **only person authorized** for **making changes** in: PRODUCT CONCEPTS, **RECIPES**, FORMULAS, PROCESS, DESIGNS, ETC. for all Unifoods Products.

(Emphasis added.)

15. Mr. Perez Grovas was and is the International Trade Director of UF and was the most senior officer of UF with whom IFG dealt.

16. It is undisputed that UF provided Diamond Drinks with a recipe that contained calcium lactate.

4

17. It is equally undisputed that the ambient atmosphere of the Diamond Drinks facility contains substantial quantities of yeast that found their way into empty bottles before they were filled with Bonafina™.

18. It is an immutable rule of physical science that calcium lactate is "yeast food." http://chemistry.about.com/od/foodcookingchemistry/a/cadditives.htm; http://nutritiondata.self.com/topics/food-additives; http://www.ulprospector.com/en/na/Food/Detail/5285/195526/Calcium-Lactate; and http://www.agriculturekey.com/agric-byp_989133_calcium-lactate.ht.[1]

19. So when Bonafina™ fruit juice containing calcium lactate was permitted over time to react with yeast in bottles that had been stored in the Diamond Drinks' plant, the yeast nourished by the calcium lactate multiplied in number and caused the sugar in Bonafina™ to ferment thus causing the volume inside the bottles to expand in turn causing yeast contaminated bottles to bulge and sometimes to leak because the yeast contaminated bottles could not withstand the pressure of their ever increasing volume generated by the gas created by the fermentation process.

---

[1] These authoritative scientific authorities were presented to the Arbitrator and were not disputed by UF.

20. This is a rule of physical science that is as both predictable and repeatable as the rule of gravity that foretells that if one holds a pencil over a table and releases it, it will always fall and never rise.

21. Unfortunately, for some 13 months nobody at UF, IFG or Diamond Drinks knew that rule of physical science.

22. Accordingly, Bonafina™ fruit drinks, which are advertised to have a shelf life of six months, began bulging and leaking after 2 months or so. Attached hereto as Exhibit C are photographs submitted to the Arbitrator at the hearing that depict how the leaking fruit juice ruined store displays.

23. All sorts of "fixes" were attempted including (a) doubling amount of preservatives; (b) changing the blending process; and (c) pasteurizing the product – the only suggestion offered by UF. None of these proposed solutions worked.

24. Finally – by random luck – in January 2013 a food scientist working for another Diamond Drinks' customer was asked by Diamond Drinks if he had any thoughts about this problem that had been plaguing all concerned for some 13 months.

25. That food scientist, knowing that yeast was present in the bulging bottles based upon lab tests that IFG had had conducted as early as November 2011, immediately identified calcium lactate as the cause of the problem.

6

26. Completely frustrated by UF's failure to meet its obligation under Section 4.3 of the Agreement to provide Diamond Drinks with a recipe that worked, IFG – in direct violation of Mr. Perez Grovas' instruction in his e-mail quoted in paragraph 17 above – told Diamond Drinks to remove calcium lactate from the recipe in the next batch of Bonafina™ fruit drink it made and then see what happened.

27. What happened is from that first batch made without calcium lactate as part of the recipe until today there have been no bulging or leaking bottles of Bonafina™ fruit drinks manufactured at Diamond Drinks.

28. The removal of calcium lactate from the recipe provided by UF to Diamond Drinks solved the problem completely.

29. No reasonable person could dispute -- truly beyond a reasonable doubt -- that the recipe was the cause of the bulging and leaking bottle problem.

**The Award Fails to Draw Its Essence from the Agreement.**

30. The Award holds in paragraph 39 that "The bulging and leaking bottle issue **appears to have been resolved by a recipe change**, but that does not mean that there was anything defective in the original recipe." (Emphasis added.)

31. This holding is not only plainly illogical, but fails to draw its essence from the Agreement.

7

32. It is plainly illogical because the original recipe produced unmerchantable Bonafina™ while the changed recipe produces merchantable Bonafina™.

33. More simply stated, the original recipe provided to Diamond Drinks by UF did not work, while the changed recipe works.

34. The "essence of the Agreement" is equally simple.

   a. Given its geographic advantages, IFG, a company with no technical expertise, logically was responsible to scout for and preliminarily identify a potential "US Manufacturer" within its territory.

   b. UF, a manufacturer with technical expertise, then was to inspect and in its sole discretion decide whether IFG's prospect was in fact technically capable and worthy of being a "US Manufacturer," a decision that plainly was in the sole discretion of UF.

   c. If UF approved that prospect as a "US Manufacturer," then it had to provide that company with a recipe and other technical information sufficient to enable that company to manufacture merchantable Bonafina™ in its facility – not someplace else.

   d. Once UF had in substance "set up" the new 'US Manufacturer" so that it could manufacture merchantable product, then – and only then – did IFG become responsible for dealing with day to day problems again logically based upon its geographic advantages as contemplated by

Section 3.6 of the Agreement providing for IFG to assume responsibility for "coordinating all operational activities related to the manufacture" of UF products and for "resolving and troubleshooting" problems related to a US Manufacturer's performance."

35. The Award therefore ignores the essence of the Agreement because it excuses UF from its obligation under Section 4.3 to provide Diamond Drinks with a **recipe** that worked in its facility after having approved it as a US Manufacturer.

36. The essence of the Agreement is that UF – not IFG – is in charge of the Bonafina™ recipe as Mr. Perez Grovas made absolutely clear in his e-mail quoted in paragraph 16 above and, therefore, was obliged to provide Diamond Drinks with a recipe that worked on day one in its plant.

37. The **sole cause** of IFG's Bonafina™ related damages was that the **recipe** that UF provided to Diamond Drinks contained calcium lactate.

38. Accordingly, so much of the Award as denies IFG the recovery of damages for UF's breach of Section 4.3 of the Agreement should be vacated because it fails to draw its essence from the Agreement.

**IFG's Damages**

39. IFG's damages certainly cannot be resolved on this motion. In paragraph 47 of the Award, the Arbitrator refers to "the parties' shared assumptions

9

about reasonable sales goals." We assume that that reference is to a report that IFG made to UF's Board literally on the day that the Agreement was signed that contained assumptions about sales goals.

40. Obviously, IFG's damages are not to be measured by gross sales, but rather by profits that would have been made on those "shared assumptions about reasonable sales goals," together with the enterprise value today that IFG would have, had those "reasonable sales goals" been achieved **but for** UF's breach.

41. This is an issue to which IFG believes that parties can possibly stipulate or, worst case that a Magistrate Judge can easily resolve in a single day hearing.

42. Accordingly, if the Court agrees with IFG regarding the merits of its motion, it respectfully suggests that the Court consider referring the issue of the determining the amount of its damages to a Magistrate Judge.

**IFG Respectfully Reserves Its Right to Seek Additional Relief In
The Event That This Court Grants This Motion**

43. IFG respectfully reserves its right to move to vacate so much of the Award as found it to have materially breached the Agreement in the event that this Court grants this motion.

44. If this motion is not granted, then IFG would not have good cause to move to vacate that part of the Award.

45. In the interest of judicial economy, IFG therefore does not wish to burden this Court with the presentation of evidence and legal argument that depending upon the outcome of this motion may be wholly irrelevant.

46. If this Court does not determine this motion within the three months that IFG has to seek additional relief, IFG will file a second motion to preserve this Court's jurisdiction to review the entire award in the event that this motion is ultimately granted.

Dated: New York, New York
September 5, 2014

BAINTONLYNCHLLP

By: _____
J. Joseph Bainton (JB-5934)
*Attorneys for Plaintiff*
767 Third Avenue
New York, NY 10017
Telephone: (212) 201-5705
e-mail: bainton@baintonlynch.com